# In the United States Court of Federal Claims

No. 25-1498
(Originally filed: February 6, 2025)
(Re-issued: March 3, 2026)[1]
NOT FOR PUBLICATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

SHEELA INC.,

       *Plaintiff*,

v.

THE UNITED STATES,

       *Defendant*.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>OPINION</u>

*Bruggink*, Judge

      This is a protest of the Air Force's decision not to award plaintiff a contract for future construction services. The matter is fully briefed on cross-motions for judgment on the administrative record. Oral argument was held on January 23, 2026. As we announced at the end or oral argument and confirmed by order shortly thereafter, we deny the protest because plaintiff has not shown that the agency's past performance evaluation was illegal or irrational.

---

[1] This opinion was originally filed under seal to afford the parties an opportunity to propose appropriate redactions. They did not propose any redactions. the opinion THUS appears in full, though several clerical errors have been corrected in the public version.

BACKGROUND[2]

Sheela Inc. is a small New Jersey business protesting award of six contracts under Solicitation No. FA448424R0017 ("Solicitation"). The Air Force sought requests for proposals on an indefinite quantity, indefinite delivery multiple award construction contract ("MACC") at Joint Base McGuire Dix Lakehurst, New Jersey. The Air Force issued the solicitation on September 5, 2024, in accordance with Federal Acquisition Regulation ("FAR") part 15 and subpart 36.3. The procurement was set aside for small businesses. The solicitation provided for a one-year base contract with six option years. The Air Force contemplated five awards but permitted more based upon proposals for a "seed" project. Administrative Record ("AR") at 373. The project was to convert a dorm room into a common area kitchenette, a project worth approximately $100,000. *Id.* The entire contract will be worth up to $300,000,000 over the course of the six possible years.

Section L of the solicitation outlines the proposal requirements. AR at 360-65. Offerors were "required to meet all solicitation requirements" including small business certifications and technical requirements under section L-1.4. *Id.* at 360. "Failure to meet a requirement" carried the possibility of disqualification from the award. *Id.* The bid proposals were to be submitted in three separate tranches: (1) Volume I – Contract Documents; (2) Volume II – Past Performance; and (3) Volume III – Price. *Id.* (§ L-2.1). Offerors were required to provide information demonstrating "customer satisfaction with overall job performance and quality" in section L-2.2.2.2. *Id.* at 363. They were permitted to "provide a list of no more than three (3) of the most relevant contracts performed . . . within the last five (5) years. *Id.* (§ L-2.2.2.4). These contracts were to "include efforts that have an award value" of at least $100,000 "with a minimum scope, magnitude and complexity of the seed project." *Id.*

Section L-2.2.2.4 also required offerors to submit past performance qualifications ("PPQ") through customer surveys. *Id.* Offerors were directed to approach customers for whom they had recently performed work like the seed project, request they complete a questionnaire, and have the customers submit the questionnaires directly to the Air Force. *See id.* Section L-2.2.2.4 include a prominent disclaimer stating, "past and present performance questionnaires will not be accepted from the offeror." *Id.* at 364. Each offeror

---

[2] These facts are drawn from the Administrative Record unless otherwise indicated.

was required to attach a breakdown of its price with the label J-8 "Seed Project Bid Schedule." AR at 837. The price was required to reflect all "personal, supplies, services, management, overhead, other direct costs, G&A [general and administrative expenses], and profit" required by the proposal. *Id.*

The solicitation lays out the review methodology for proposals in section M. AR at 366-69. The review was to be conducted by five people constituting the Source Selection Evaluation Board ("SSEB" or "board"). The SSEB would recommend awards to offerors providing the best value based on an evaluation of past performance and price. *Id.* at 367. Past performance was weighed "significantly more important" than "cost or price considerations" under section M-2.2. AR at 367. After the SSEB finished its review, the Source Selection Authority ("SSA") was to assess the board's work and award the contracts.

The bid proposals were initially ranked according to quoted price and then analyzed in groups of five. The board examined the five lowest priced offerors to determine whether their past performance merited the contract. *Id.* After evaluating each offeror, the board would assign one of five confidence ratings: substantial, satisfactory, neutral, limited, or no confidence. Only offerors receiving a "Substantial Confidence" rating would receive an award. *Id.* However:

> If the lowest five (5) priced offerors were not determined to have a "Substantial Confidence" performance confidence assessment, the next five (5) lowest priced offerors would be evaluated, and the process would continue (in order by price) until a target of five (5) offerors were determined to have a "Substantial Confidence" performance assessment, or until all offerors re-evaluated.

*Id.*

In making its confidence ratings, the SSEB was required to evaluate "the offeror's performance based on the recency and relevance of the information . . . context of the data, and general trends in" the contractor's performance. *Id.* at 368. In section M-3.1.1, the solicitation framed recency as the five years before the solicitation's issuance – from September 5, 2019, to September 5, 2024. *Id.* Relevancy was measured against the kitchenette (seed) project: submitted contract references had to be "no less than $100k

with a minimum scope, magnitude, and complexity of the seed project." *Id.* Complexity was defined as "the ability to perform and manage several task orders at the same time and successfully perform similar or higher magnitudes than described in the solicitation." *Id.* The solicitation informed offerors that the Past Performance Information Retrieval System and Federal Awardee Performance & Integrity Information Systems, along with any other Government-sponsored information available might be employed to determine confidence ratings under FAR Subpart 9.104. AR at 836.

The initial deadline for submissions was October 21, 2024, but was subsequently amended to November 12, 2024. Sheela submitted its unredacted bid proposal to the Contracting Officer for JBMDL, Dana Wright, on November 11, 2024. Plaintiff acknowledged all amendments to the solicitation. The Air Force received a total of 25 proposals. Defendant alleges that all company-specific references and data were redacted by staff prior to the SSEB's review. Def's Resp. 8.[3]

In addition to the PPQs received, the SSEB also used present/past performance evaluations as provided by the offerors, CPARS, questionnaires sent to cognizant Government Program Managers (PMs), Administrative Contacting Officers (ACOs), Procuring Contracting Officers (PCOs), and contractors to rate confidence in each offeror. The board reviewed the prices under FAR 15.404-1(b). If a price were unreasonable per FAR 15.404 and 31.201-3 or unbalanced under FAR15.404-1, the bid was rejected. *Id.* at 3782. A reasonable price represents "a price to the government that a prudent person would pay" in competitive business. *Id.* On the other hand, unbalanced pricing exists, despite an acceptable total evaluated price, if "the price of one or more line items is significantly over or understated as indicated by the application of cost or price analysis techniques." FAR 15.404-1(g). The board compared offerors' prices in two ways – first, against one another and second, against "independent Government cost estimates." FAR 15.404-1(b)(2). Defendant's internal estimates for the kitchenette project were $107,313.82. AR at 3791.

After the Board evaluated the first five offers and gave its confidence ratings for each one, only four offerors were rated "Substantial Confidence"

---

[3] It is not clear from defendant's brief where that information was drawn from. Our review of the record reveals certain documents were anonymized but references to past performance contract numbers contained therein were not.

based upon past performance. AR at 140, 3786. To meet the targeted number of awards, the Board reviewed the next five offers. *Id.* It had "Substantial Confidence" in two more offerors and finished its review as shown below. *Id.*

| Offeror: | Company Name: | Performance Confidence Rating: |
|---|---|---|
| B | FBSG-GForce | Substantial Confidence |
| C | Ranco | Substantial Confidence |
| D | Benaka | Satisfactory Confidence |
| E | Eastern | Substantial Confidence |
| G | Kaser | Substantial Confidence |
| H | Sheela | Limited Confidence |
| I | Ritz | Substantial Confidence |
| J | K2 | Neutral Confidence |
| L | MERIT | Limited Confidence |
| M | Sequoia | Substantial Confidence |

AR at 3776. After reviewing the SSEB's report and evaluations, the SSA conducted his own independent analysis, which upgraded one offeror, Benaka, making it eligible for award. *Id.* The SSA also determined that six awardees, rather than the originally anticipated five, would better promote future competition among the IDIQ holders for task orders. *Id.* At 3777. The following six offerors were selected for award:

| Offeror: | Company Name: | Performance Confidence Rating: | Price: |
|---|---|---|---|
| B | FBSG-GForce | Substantial Confidence | $79,200.00 |
| C | Ranco | Substantial Confidence | $79,376.80 |
| D | Benaka | Satisfactory Confidence | $96,518.37 |
| E | Eastern | Substantial Confidence | $99,486.72 |
| G | Kaser | Substantial Confidence | $103,437.38 |
| I | Ritz | Substantial Confidence | $129,018.00 |

*Id.*

In reviewing Sheela's past performance, the SSEB pulled twenty-eight Contractor Performance Assessment Reporting System ("CPARS") reports covering a three-and-a-half year span. AR at 2903. Those reports included twenty-two "Very good," eighty-five "Satisfactory," three "Marginal," and one "Unsatisfactory" ratings. *Id.* The four negative reviews

5

came from two reports: the 2022 CPARS report for Contract 47PC0220D0009 Order 47PC0422F0154 ("009 contract") and the 2023-24 CPARS report for Contract FA448420D0002 ("002"). *Id.* The General Services Administration ("GSA") managed the '009 contract – a $246,043.00 project to upgrade a judicial chamber at the U.S. Court of International Trade in New York. AR at 3750. The CPARS report contained "Marginal" ratings for "Schedule" and "Regulatory Compliance" and an "Unsatisfactory" rating in "Management." AR at 2903. Per the reports, plaintiff did not deliver on time and required three deadline extensions. AR at 3805. It also did not comply with a federal security regulation and a New York City asbestos regulation. *Id.* According to the report, Sheela did not communicate well and failed to properly supervise subcontractors multiple times on the project. *Id.* GSA did not recommend plaintiff for future work on similar projects. *Id.*

The last negative CPARS rating was for a project done at JMDBL. The rater, CO Wright, described the performance on multiple tasks orders as marginally effective in management with one task order deemed "Unsatisfactory" in management for ineffective site supervision. AR at 3805. She added that Sheela did not provide additional value on the '002 contract but she would recommend it for future work on similar projects. *Id.*

In addition to reviewing the CPARS reports, the SSEB also examined the three comparable contracts plaintiff submitted and the three PPQs shared on plaintiff's behalf. *Id.* These PPQs were noted as being recent and very relevant; plaintiff's performance was rated as "Satisfactory" in two questionnaires and "Exceptional" in the third. AR at 3751. Sheela received thirty out of thirty "Satisfactory" ratings in the Management and Schedule subcategories of those surveys. *Id.* The PPQ raters noted they would each recommend Sheela for future work on similar projects. AR at 1153, 1157, 1161. Taking all of the above into consideration, the SSEB rated plaintiffs as "Limited Confidence." The board found that Sheela provided only "Satisfactory" work without providing excess value especially given the multiple marginal/unsatisfactory ratings received. AR at 4061-63.

On March 12, 2025, the Air Force formally awarded the six MACCs and notified Sheela that it was unsuccessful. Sheela requested a written debriefing, and the Air Force responded the next day. AR at 4064. The debrief explained that, although plaintiff's price was lower than one of the awardees, the Air Force considered past performance significantly more important than price. *Id.* As promised, Sheela's lower past performance

scores were determinative for the agency's best value determination because Sheela was not rated "Substantial Confidence" for that factor.

12 days later, on March 24, 2025, plaintiff initiated a protest at the Government Accountability Office ("GAO"), challenging the past performance ratings it received and the best value determination of the Air Force.  On July 1, 2025, GAO denied the protest, finding that the agency's evaluation and determination were reasonable.  *Sheela, Inc.*, B-423412, 2025 CPD ¶ 146 (Comp. Gen. July 1, 2025).    Sheela then requested reconsideration, but no decision on reconsideration was issued before plaintiff filed the current complaint on September 10, 2025.[4]

## DISCUSSION

Plaintiff protests three aspects of the Air Force's decision, two of which center on Sheela's past performance ratings.  The third concerns the other offerors' price proposals.  We begin with the dispositive past performance evaluation.

## I.  Past Performance

Sheela's first and primary attack focuses on whether the Air Force properly considered plaintiff's past performance information. Plaintiff argues that the agency weighed Sheela's negative past performance information as more important than it should have and more stringently than it did for other offerors.  It believes these actions ran afoul of FAR 15.305(a)(2).  Plaintiff also asserts that the agency lacked impartiality and treated Sheela differently than it did others as concerns CPARS' ratings, owing to the presence of three agency personnel on the SSEB who had previous experience working with plaintiff.  Plaintiff also alleges several mistakes were made by the agency during the price evaluation of other offerors.

As in any bid protest, the protestor bears the burden of establishing by clear and convincing evidence, from the administrative record, that the agency's decisions were arbitrary and capricious or otherwise not in accordance with the law.  *See Bannum, Inc. v. United States*, 404 F.3d 1346,

---

[4] GAO does not consider reconsideration requests subject to its statutory 100-day period of protest decision.  Once plaintiff filed here, GAO dismissed the protest pursuant to 4 C.F.R. § 21.11 (2025).

1351 (Fed. Cir. 2005). This means that, so long as the agency had a rational basis for what it did and its actions were not in violation of any applicable law or regulation, the court will not substitute its judgment for that of the agency. *See Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 105 Fed Cl. 541, 549 (2012), *aff'd*, 720 F.3d 901 (Fed. Cir. 2013). In addition, in a negotiated best value procurement under FAR part 15, the deference owed the agency is heightened because many of the value judgments attendant to such an evaluation are inherently subjective. *See Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004). It would be improper for the court to second guess those judgments absent some clear legal violation or blatant irrationality. De minimis errors will not justify relief. *Data Sys. Corp. v. Dalton*, 88 F.3d 990, 1000 (Fed. Cir. 1996).

### A.    FAR 15.305(a)(2) and Past Performance Ratings

Plaintiff begins with FAR 15.305(a)(2), which prescribes general guidelines for agencies performing evaluations of past performance information. The section starts with the purpose of a past performance evaluation, describing it as "one indicator of an *offeror*'s ability to perform the contract successfully. The currency and relevance of the information, source of the information, context of the data, and general trends in contractor's performance *shall* be considered." 48 C.F.R. § 15.305(a)(2) (2025). Plaintiff believes these goals were not met by the Air Force here due to its over-reliance on negative CPARS information and by its failure to give proper weight to the comments submitted by Sheela on one of those negative reports.

The first is a 2022 CPARS report covering a $246,043 task order under a GSA contract to refresh a judicial chambers, including carpeting, painting, wood refinishing, and similar work. The CPARS for this effort contained two "Marginal" and one "Unsatisfactory" ratings. Plaintiff avers, however, that the copy contained before the SSEB did not contain Sheela's formal disagreement and request for reevaluation. The record, however, does contain Sheela's extensive comments made on the CPARS; it only omits a comment from Sheela that it did not concur with the rating. Plaintiff alleges that, had the reevaluation been in front of the Air Force, the result would have been different.

The next piece of negative information targeted by plaintiff is from a 2023-2024 CPARS from a multi-year IDIQ multiple-award contract in place since 2020, under which Sheela performed several different task orders. In

8

the 2023-2024 report, plaintiff was rated "Satisfactory" in three categories but "Marginal" for management. Sheela disputes this characterization as inaccurate and points out, through an affidavit from one of its principals, that ratings for a subsequent year on this contract were better.[5] This negative management score was then noted by the SSEB and contributed to its past performance rating. Had the SSEB given consideration to the better future scores, as it should have per plaintiff, the result would have been different.

Plaintiff also urges that the Air Force failed to consider similar "marginal" ratings from another offeror's CPARS for a different contract. Instead, the agency considered other more recent, positive CPARS information from the same contract to be more probative on the question of past performance. If treated equally, argues Sheela, the agency should have considered more recent favorable CPARS ratings for it, which would have resulted in a higher confidence rating for past performance.

Plaintiff also finds disparate treatment by comparing the Air Force's treatment of Sheela's "marginal" 2023-2024 CPARS rating with its consideration of "marginal" ratings received by other offerors on several other contracts. Plaintiff believes the fact that it was ultimately recommended for future work in the final CPARS report for that same contract, while its management factor "Marginal" rating was weighed against it by the Air Force, is evidence that it was subject to a more stringent examination by the agency than other offerors who also received "Marginal" CPARS ratings but were awarded contracts.

Lastly, Sheela points to the agency's treatment of the PPQs submitted by Sheela's customers to the Air Force. The Air Force discounted some of the positive feedback received for Sheela because the comments section of the PPQ did not contain further elaboration or explanation. *See* AR at 3751 (noting that the rater "did not elaborate on the offeror's performance on how it met or exceeded contractual requirements"). Plaintiff argues that this was unfair treatment and contrary to the requirements of the solicitation because comments were only required in the PPQs for positive feedback that rose to the level of an "Exceptional" adjectival rating. Plaintiff also urges that an examination of the other successful offerors' PPQs reveals similar problems but not similar discounting by the agency.

_____

[5] We do not consider this information, however, because it is not part of the administrative record. We granted defendant's motion to strike three extra-record affidavits in or our order of January 23, 2026 (ECF No. 28).

Defendant disagrees on all points, factually and legally. It begins with the deference owed to agencies in making past performance evaluations, emphasizing that such ratings are a matter of agency discretion. *See, e.g., Todd Constr., LP v. United States*, 88 Fed. Cl. 234, 247 (2009). As to the particulars of the challenged CPARS ratings, defendant points out that the comments to the 2022 CPARS associated with the reevaluation request were part of the record and argues that the agency rationally concluded that no change in the ratings was warranted.

Further, the Air Force was well within its discretion to weigh the information contained in the relevant CPARS as it did. The court will not reweigh the proposals. We agree. There is no indication that the agency failed to take into account any relevant information. The same is true regarding the 2023-2024 CPARS with which plaintiff takes issue. The Air Force rationally considered negative information in plaintiff's ratings to be indicative of increased performance risk. But there is an even more fundamental problem for plaintiff in that regard.[6]

Defendant rightly points out that the 2024-2025 CPARS rating that Sheela believes ought to have been considered favorably during the evaluation was finalized after the close of the solicitation period, meaning that it was not properly in front of the SSEB. Nor would we find reversible error if it were within the Air Force's purview. The fact that the 2023-2024 CPARS contained negative information that concerned the agency was a rational basis on which the agency could base its conclusions. It is now too late to change those ratings. The fact that Sheela wishes its past performance record to be viewed differently is no reason to upset the agency's actions.[7]

---

[6] Likewise, the court is not troubled by the fact that the other offerors' past performance records contained "Marginal" ratings at various points. These were different contracts from plaintiff's and involved different information and circumstances. That the Air Force considered the whole of the available information rather than simply tallying and comparing adjectival CPARS ratings is to its credit rather than any sort of legal demerit.

[7] The successful offerors' positive credit for later improved ratings is not evidence of disparate treatment. Those positive ratings were not received in time for the agency to consider them.

That brings us to the PPQs which plaintiff argues were improperly considered, both as to one of its positive ratings and to the positive ratings of other offerors. We see no error in this regard. The solicitation requires that "All <u>Unsatisfactory, Marginal, or Exceptional</u> ratings <u>require</u> comments to support the same. Failure to provide comments will render the questionnaire void . . ." AR at 790 (emphasis in the original). The parties disagree as to the meaning of that provision. Plaintiff argues that each individual rating of "Unsatisfactory, Marginal, or Exceptional" required a comment, while defendant believes that only overall ratings for a PPQ that fit those adjectives require explanation in the comments.

We agree with the government that the agency followed the solicitation. The best reading of that language is that the overall ratings required explanatory comments (if they were "Unsatisfactory, Marginal, or Exception") because the solicitation warned that the entire questionnaire would be disregarded if comments did not support the rating received. It would make little sense to throw out the entire questionnaire if its overall rating was not one of the denominated adjectives for which the agency required an explanation.

Plaintiff received an overall "Exceptional" rating, which thus required an explanation in the comments. None was found. The conclusion that the "Exceptional" rating need not be credited was consistent with the solicitation and not otherwise irrational.

Further, the fact that some of the "Exceptional" ratings received by other offerors were credited by the agency is not evidence of unfair treatment. Plaintiff argues that the comments were insufficient to support such ratings, but that is a matter, once again, of agency discretion. The solicitation was followed, and that being the case, we have no reason to second guess the evaluation and ratings by the Air Force.

In sum, plaintiff has not shown an error by the agency in its past performance evaluations.[8] The agency made distinctions between offerors

---

[8] The alleged discrepancy pointed out by plaintiff in the agency's description of its ratings gives us no pause. The fact that the agency described Sheela's PPQs as reflecting three "Satisfactory" ratings rather than two "Satisfactory" and one "Exceptional" is not erroneous given our holding above that the solicitation required any overall PPQ exceptional rating to be explained in the comments. That PPQ did not contain an explanation in the comments,

based on the relevant information it had in front of it, or discounted other information when it found that information to be less relevant. This is all within the proper scope of agency discretion. There was no violation of FAR part 15.305 and no reason to upset the agency's ratings after the fact.

B. FAR 1.602-2 and Impartial Evaluators

Sheela's second avenue of attack centers on what it believes was an overall pattern of partiality against it by several of the SSEB evaluators whom Sheela avers had too much personal history with Sheela. It points to many of the alleged inequities in the ratings that we dealt with above as well as its own experience with three of the evaluators on other contract matters. It cites FAR 1.602-2 in support, which generally requires evaluators to treat offerors equitably and impartially. *See* 48 C.F.R. § 1.602-2 (2025).

With regard to the evaluators whom Sheela believes treated it poorly, we cannot rely on the affidavits of plaintiff's principals and personnel to support these contentions because they are not properly part of the administrative record nor has any showing been made that they are necessary for effective judicial review. *See Axiom Res. Mgt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009). Further, the fact that these government officials rated plaintiff as "marginal" on a prior contract is not evidence of any *per se* partiality. Plaintiff's attempt to cast doubt on the evaluation process in this manner must be rejected. Government officials are presumed to act in good faith. *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1238-39 (Fed. Cir. 2002). Absent clear and compelling evidence to the contrary—and here there is none—we presume good faith. Further, as explained above, the ratings made by the SSEB and then relied on by the SSA were well supported by the record. The evidence relied on by plaintiff to show partiality is only evidence of an agency drawing distinctions between prior ratings and offerors.

Sheela also argues that the agency expanded the scope of the past performance review for other offerors in contravention of the limits it imposed in the solicitation by considering a fourth PPQ for two offerors and

___

and the agency noted that the three individual sub-ratings in that PPQ were all "satisfactory." It thus reasonable to construe that PPQ as better fitting a "Satisfactory" rather than "Exceptional" rating. In any event, the agency could have disregarded that PPQ in its entirety given the lack of comments following the "exceptional" overall rating.

12

by using CPARS information in lieu of PPQs that went unreturned by the agency to whom they were submitted. The government argues that neither is a violation of the FAR, the solicitation, nor evidence of bias against Sheela. Defendant highlights that past performance references were limited by the solicitation to three but no numerical limitation was put on offerors for the submission of PPQs. We agree. Nowhere in the solicitation were PPQs limited to three.

As to the Air Force's use of CPARS in lieu of PPQs, we also find no error. It is well settled that the agency may rely upon all past performance information available to it, including information outside of an offerors' proposals. *See, e.g.*, 48 C.F.R. § 15.305(a)(2)(ii) (2025) (requiring agencies top consider submitted past performance information and information from "other sources"). The solicitation contained neither an explicit nor implicit limitation in this regard, and thus we find no basis on which we could enjoin the agency for that reason. The agency wanted to have prior government customer's experiences with these offerors. It used CPARS ratings and PPQs to obtain that information. Where PPQs were unavailable for a particular prior contract, the agency consulted CPARS information that contained the relevant information. We find no irrationality in that.

Lastly on the question of the agency's alleged partiality, Sheela argues that the SSEB improperly relied on past contract efforts from other offerors that it avers ought to have been considered irrelevant due to a lack of complexity. We wholly reject this argument. It is, again, an invitation for the court to supplant the agency's role as evaluator and to re-do the weighing of past performance references. We decline the invitation.[9]

## II. Price

The last challenge brought by plaintiff concerns the price proposals of several other offerors. Plaintiff examines the various price proposals and asserts that various cost items are missing, such as profit and overhead in several instances, and in two instances, the offerors failed to include their business-size standard. These allegations are wholly unavailing for two reasons.

---

[9] Sheela also urges that the Air Force considered 42 CPARS during its evaluation of one of the successful offerors but only 18 of which appear in the record now, which it finds suspicious. We do not, in the absence of some suggestion of prejudice to plaintiff that resulted from this omission.

As defendant correctly points out, the solicitation did not require profit and overhead rates because no cost analysis was required by the FAR for this contract. There is no other independent reason to question the Air Force's conclusion that these other offeror's prices were fair and reasonable. The agency compared the prices to its own independent government estimate, which is a pedigreed method of price analysis. 48 C.F.R. § 15.404-1(b)(2)(v) (2025). Thus, the first reason plaintiff's challenge to the price evaluation fails is because cost information was not required.

The omission of business-size standard information was a mistake made by two offerors, but plaintiff does not show how this would have rendered the agency's price analysis irrational. The agency was able to calculate the total price of these offerors and compare it to the internal estimate. Further, we see no reason why the agency cannot, as defendant rightly posits, fix the omission after award during its review of the awardees' representations and certifications. This omission was, at worst, de minimis, and plaintiff cannot show any prejudice to it from this error.

The lack of prejudice is the second fatal flaw with plaintiff's price argument. Price was less important than past performance, and it is clear from the evaluation record that the agency used past performance as the discriminating factor. Plaintiff is unable to show that it was entitled to a "Substantial Confidence" rating nor that the successful offerors were not entitled to that rating. Plaintiff thus could not have been awarded the contract, per the solicitation. Plaintiff has not shown how minor omissions from two offerors' price proposals would have changed the Air Force's conclusion that its confidence in Sheela was limited.

## CONCLUSION

Because plaintiff was unsuccessful in questioning the Air Force's past performance evaluation of Sheela's and the other offerors' proposals, it has not shown success on the merits. Thus we need not consider the other factors necessary for an injunction. We have already denied plaintiff's motion for judgment and granted defendant's cross-motion by separate order. All that remains then is for the complaint to be dismissed. Accordingly, the Clerk of Court is directed to enter judgment for defendant and to dismiss the Complaint. No costs.

<u>s/Eric G. Bruggink</u>
ERIC G. BRUGGINK
Senior Judge